## JONAS *v.* BLANCHARD.

There was no error in granting a nonsuit.

DECEMBER 14, 1916.

Action for damages. Before Judge Smith. DeKalb superior court. September 10, 1915.

*C. D. Maddox,* for plaintiff.

*Stiles Hopkins* and *James J. Slaton,* for defendant.

EVANS, P. J. The action was brought by a servant against the master, for damages alleged to have been sustained by the servant as the result of injuries caused by the master's negligence. A motion for nonsuit was granted, and the plaintiff excepted. The plaintiff's evidence is confusing and contradictory. It may be gathered from it that he had been in the employment of the defendant about eight or nine months, working as a common laborer around the dwelling of the defendant, his duties requiring him to carry wood into the kitchen and to work about the kitchen. The defendant occupied a dwelling which was equipped with plumbing, and there was in the kitchen a metal tank large enough to hold ninety gallons of water, resting on a stool 18 or 20 inches high. In one part of his testimony the plaintiff said that the tank contained cold water all the time, but in another part he declared he thought the tank was empty all the time. The water-pipe in the basement had burst, and the defendant and the plaintiff went down to cut off the water so as to stop the leak. The defendant cut off the water, and went up stairs, instructing the plaintiff to come up stairs when he had finished with the work he was directed to do. In about five minutes the plaintiff ascended the stairs and went into the kitchen, where the defendant was standing by the tank near the stove. What occurred then was described by the plaintiff as follows: "When I got up there in the kitchen, going from the basement, Mr. Blanchard [the defendant] had a pipe-wrench and

screw-cutter in his hand.   After I got up, Mr. Blanchard said he had disconnected the tank to take it off from there; he thought I could hold it up; he said he disconnected, and he thought I could hold it until he could get around to me.   In that conversation I am talking about, Mr. Blanchard told me when he disconnected, and it fell on me; he told me that he disconnected it, and he thought I could hold it until he came around, but I could not.   I did not hold it.   I could not hold it.   I never did touch the tank at all. I suppose it was about seven feet from the door of the kitchen to the tank.   When I got to the door of the kitchen Mr. Blanchard was standing behind the tank.   I could see his whole back.   Yes, he had his back turned to me, and when I came in I could see his back and side.   Yes, that is the time I saw the wrench in his hand; he had one hand on the tank.   It looked like he was kinder propped against it; it looked like he was kinder propped against the tank. It seemed to me he was holding up the tank with his breast; . . it seemed like he was holding the tank up with one hand leaning against the tank.   When I came up I went to where he was.   I walked on to where he was; I went on to him.   As to how far I was from him when I saw him first with that tank leaning on his breast, I suppose it was seven feet.   As to whether the tank was leaning against him or was perfectly upright, it was perfectly upright.   As to how it was leaning against him if it was perfectly upright, it seemed like he was kind of pressed against it.   Yes, he was between me and the tank.   If he was between me and the tank, as to how I know the tank was kind leaning against his breast, it seemed like he was kinder pressing the tank.   He told me to get on the far side and catch the tank.   As soon as I got around there, the tank fell.   I suppose I was about a foot of the tank when it fell.   I had got on the far side of the tank.   He told me to catch it and hold it, but it fell before I could do anything with it. That was all he said."   The tank fell upon the plaintiff's foot, inflicting the injury complained of.

The plaintiff alleged in his petition that he did not know that the tank contained water, nor did he know that the defendant had disconnected the tank at its top from the plumbing; and that the defendant was negligent in failing to give him warning of these matters.   His testimony is too confused and contradictory to establish the defendant's alleged acts of negligence.   His testimony

tends to show that he knew the condition of the tank, both with respect to its being filled with water and to its having been disconnected from the wall. With knowledge of these facts he undertook to assist the master in protecting his house from the broken plumbing in the basement. He assumed the dangers incident to the task he undertook to perform; and as he failed to show that the master was negligent, the nonsuit was proper.

*Judgment affirmed. All the Justices concur, except Hill, J., disqualified.*